# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30358

United States Court of Appeals
Fifth Circuit

**FILED**

July 16, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff-Counter Defendant –
> Appellee

v.

AMERICAN COMMERCIAL LINES, L.L.C.,

> Defendant-Counter Claimant –
> Third Party Plaintiff – Appellant

v.

ENVIRONMENTAL SAFETY & HEALTH CONSULTING SERVICES,
INCORPORATED; UNITED STATES ENVIRONMENTAL SERVICES,
L.L.C.,

> Third Party Defendants –
> Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, GARZA, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Following an oil spill, responsible party American Commercial Lines ("ACL") contracted with Environmental Safety & Health Consulting Services Inc. ("ES&H") and United States Environmental Services, L.L.C. ("USES") to provide cleanup services. After ACL failed to pay the full outstanding amounts owed to ES&H and USES within the 90-day period mandated by the Oil

No. 13-30358

Pollution Act of 1990 ("OPA"), the United States paid the balance out of the Oil Spill Liability Trust Fund (the "Fund") and filed suit against ACL to recover its payment. ACL sought to join ES&H and USES as third party defendants, or alternatively hold ES&H and USES directly liable to ACL to the extent ACL was found liable to the United States. The district court joined both parties but dismissed ACL's claims against ES&H and USES as displaced by OPA.[1] We AFFIRM.

## FACTUAL BACKGROUND

This case involves an oil spill in the Mississippi River near New Orleans, Louisiana. On July 23, 2008, the M/V TINTOMARA, an ocean-going tanker, collided with DM 932, an unmanned barge carrying slightly less than 10,000 barrels of fuel oil, which was towed by the tug M/V MEL OLIVER. The collision substantially damaged the barge, and a large quantity of oil spilled into the river. ACL owned the tug and barge. D.R.D. Towing, L.L.C. ("DRD") provided the crew for the tug towing the barge under a bareboat charter between ACL and DRD. *Gabarick v. Laurin Maritime (America) Inc. v. D.R.D. Towing Company, L.L.C.*, 2014 WL 2118621, at \*1 (5th Cir. May 21, 2014).

Under the Clean Water Act ("CWA"), also known as the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. §§ 1321, as amended by OPA, the Coast Guard has primary overall responsibility for directing oil spill cleanup

---

[1] The district court used the term "preemption" in its "Order and Reasons." "Preemption" and "displacement" are often used interchangeably. *See, e.g., Conner v. Aerovox, Inc.*, 730 F.2d 835, 841 (1st Cir. 1984) (using "preempt" and "displace" interchangeably in concluding that the Federal Water Pollution Control Act displaced federal maritime law). Technically, however, preemption refers to whether federal statutory law supersedes state law, while "displacement" applies when, as here, a federal statute governs a question previously governed by federal common law. Although in the preemption scenario, we assume that "the historic police powers of the States were not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress," displacement analysis assumes that "it is for Congress, not the federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *City of Milwaukee v. Illinois*, 451 U.S. 304, 316-17 (1981). Accordingly, we use the term "displacement" throughout this opinion.

in the coastal zone. *See* 33 U.S.C. § 1321(d)(2)(C); 40 C.F.R. § 300.145. However, under OPA, the Coast Guard identifies "responsible part[ies]" who must pay for oil spill cleanup in the first instance,[2] typically "any person owning, operating, or demise chartering the vessel." 33 U.S.C. § 2701(32). Responsible parties may then contract with spill responders to execute the oil spill cleanup.

The Coast Guard's National Pollution Funds Center ("NPFC") administers the Fund. The Fund is authorized both (1) to pay outstanding cleanup costs and damages when a responsible party can limit its liability or establish a complete defense (or when no responsible party is ever identified), *see id.* § 2712(a)(4); and (2) to guarantee that particular OPA claimants, including spill responders, are paid quickly, *see id.* § 2713. Claimants must first present their claims to the responsible party, *see id.* § 2713(a), but if the responsible party has not paid the claim within 90 days, "the claimant may elect to commence an action in court against the responsible party . . . or to present the claim to the Fund." *Id.* § 2713(c)(2); *see also* 33 C.F.R. § 136.103(c)(2). The Fund will reimburse only those removal costs that are necessary and reasonable, and that adhere to the relevant statutory criteria for Fund payments. *See* 33 C.F.R. §§ 136.105, 136.201, 136.203, 136.205. When the Fund has made payments to cover the immediate costs of oil spill cleanup, it can recoup those payments from other entities, including the responsible party. "[P]ayment of any claim or obligation by the Fund" results

---

[2] Responsible parties are strictly liable for cleanup costs and damages and first in line to pay any claims for removal costs or damages that may arise under OPA. *See* 33 U.S.C. § 2702(a) ("Notwithstanding any other provision or rules of law. . . each responsible party. . . is liable for the removal costs and damages."); *id.* § 2713(a) ("[A]ll claims for removal costs or damages shall be presented first to the responsible party. . . ."). Hence each responsible party must establish and maintain evidence of its ability to make significant, immediate payments to spill responders and other claimants. *See id.* § 2716(a).

No. 13-30358

in "the United States Government acquiring by subrogation all rights of the claimant . . . to recover from the responsible party." 33 U.S.C. § 2712(f); *see also* 33 C.F.R. § 136.115(a) (compensation from the Fund includes an assignment to the government of the claimant's rights against third parties).

Following the spill, the Coast Guard investigated and determined that, as the owner of the barge DM-932 and tug M/V OLIVER, ACL was a responsible party under OPA and therefore liable for "removal costs and damages" resulting from the incident. *See* 33 U.S.C. § 2702(a). ACL then entered into a contract with spill responders and Third Party Defendants ES&H and USES to provide cleanup services for the oil spill. The spill responders invoiced ACL for their services, but ACL disputed some of the claims and did not pay the full outstanding amounts owed to ES&H and USES for removal and cleanup costs within the 90-day time frame mandated by OPA.[3] *See id.* § 2713(c)(2). Instead, ACL paid ES&H approximately $10.6 million and withheld $3.9 million; it paid USES approximately $14 million and withheld $4.4 million. At that point, OPA allowed ES&H and USES to "elect" one of two options: (1) sue ACL for payment; or (2) submit a claim for uncompensated removal costs to the Fund. Both spill responders filed claims with the Fund. After requesting "documentation deemed necessary" to pay a claim, *see* 33 C.F.R. § 136.105(a), the Fund paid $3,071,222.83 to ES&H and $1,519,564.74 to USES.[4] *See* 33 U.S.C. § 2713(a)-(d).

---

[3] Specifically, ACL claims that ES&H and USES (1) failed to produce the federally required I-9s establishing legal entitlement to work; (2) failed to produce the Hazardous Waste Operations and Emergency Response ("HAZWOPER") certificates needed to establish that its labor force had received the required training for oil spill cleanup; (3) requested payment for phantom labor and equipment that was never supplied during the cleanup of the oil spill; and (4) sought rates applicable for properly trained, legal workers for laborers who were in fact either not properly trained or not legally entitled to work, or both.

[4] Neither ES&H nor USES challenged the final amounts paid by the United States out of the Fund in response to their claims under OPA, though the payments were less than invoiced.

4

No. 13-30358

The United States, in turn, sued ACL to recover the Fund's payment to ES&H and USES, as well as a penalty under the CWA and statutory damages under OPA. In response, ACL contended, *inter alia*, that ES&H and USES failed to provide adequate documentation for the amounts billed to and paid out by the Fund.[5] Consequently, ACL sought to join ES&H and USES as third party defendants to the United States' claims in the proceedings below. Alternatively, ACL sought to hold ES&H and USES directly liable to ACL to the extent that ACL was found liable to the United States. The United States, ES&H, and USES opposed the joinder of ES&H and USES, and each filed motions to dismiss ES&H and USES as third party defendants to the United States' action against ACL. The district court held that ACL's joinder of ES&H and USES was proper under Fed. R. Civ. P. 14(c) and our decision in *Luera v. M/V Alberta*, 635 F.3d 181, 188-189 (5th Cir. 2011). However, citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), and *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 808 F. Supp. 2d 943 (E.D. La. 2011), the district court granted the government's Rule 12(b)(6) motion to dismiss ACL's claims against ES&H and USES because OPA displaces these claims. The district court explained in its Order and Reasons that "[t]he proper procedural vehicle to litigate defects in the claim payment process is as a defense against the Fund under the 'arbitrary and capricious' standard of the Administrative Procedure Act, as ACL acknowledges."

ACL filed the instant appeal. On appeal, ACL concedes that when OPA explicitly sets a rule of law it displaces federal common law and general

---

[5] As indicated in its brief, "ACL understands that the NPFC did not require ES&H or USES to provide either training certificates or the federally required I-9 forms for the laborers but rather relied upon questionable affidavits from ES&H and USES that all of the laborers were properly trained, legal workers. . . If ES&H's and USES's affidavits were false and ES&H and USES in fact had supplied untrained illegal laborers, then ES&H and USES must reimburse either ACL or the United States directly."

No. 13-30358

maritime law, and that, as the designated responsible party, ACL was strictly liable under OPA for costs of cleanup. ACL asserts, however, that the district court erred in holding that OPA displaced its federal common law and general maritime law claims against ES&H and USES because "OPA does not 'explicitly' do so."

## STANDARD OF REVIEW

A district court's dismissal of a complaint under Rule 12(b)(6) is a question of law that we review *de novo. Torch Liquidating Trust ex rel. Bridge Assoc. LLC v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009).

## DISCUSSION

Our inquiry presents the question of whether OPA provides the exclusive source of law for an action involving a responsible party's liability for removal costs governed by OPA. For the following reasons, we find that it does, and accordingly we hold that ACL does not have a cause of action against the spill responders who exercised their statutory right to file claims with the Fund after ACL failed to timely pay their claims.

We have previously held that, in enacting OPA, Congress intended to build upon the Clean Water Act to "'create a single Federal law providing cleanup authority, penalties, and liability for oil pollution.' . . . OPA prescribes a supplemental, comprehensive federal plan for handling oil spill responses, allocating responsibility among participants, and prescribing reimbursement for cleanup costs and injuries to third parties." *In re: Deepwater Horizon*, 745 F.3d 157, 168 (5th Cir. 2014) (quoting S. Rep. No. 101-94, at 9 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 730).

More generally, when Congress enacts a carefully calibrated liability scheme with respect to specific remedies, "the structure of the remedies suggests that Congress intended for th[e] statutory remedies to be exclusive." *United States v. M/V BIG SAM*, 681 F.2d 432, 441 (5th Cir. 1982) (internal

quotation marks and citation omitted) (construing the analogous FWPCA, whose liability standard and limited recovery of removal costs OPA borrows). Indeed, "we are to conclude that federal common law has been preempted as to every question to which the legislative scheme spoke directly, and every problem that Congress has addressed." *Id.* at 442 (quoting *In re Oswego Barge Corp.*, 664 F.2d 327, 344 (2d Cir. 1981)).[6] Here, OPA provides that "[n]otwithstanding any other provision or rule of law . . . each responsible party . . . is liable for the removal costs and damages specified in subsection (b) of this section that result from" an oil spill. 33 U.S.C. § 2702(a). Claimants must first present their claims to the responsible party, *see id.* § 2713(a), but if the responsible party has not paid the claim within 90 days, the claimant may elect to bring suit against the responsible party or seek repayment from the Fund for those removal expenses that are necessary and reasonable, and that adhere to the relevant statutory criteria for United States payments. *See* id. § 2713(c)(2); *see also* 33 C.F.R. § 136.103(c)(2), 136.105, 136.201, 136.203, 136.205. The Fund may then seek recoupment from the responsible party, having acquired by subrogation all rights of the claimant against the responsible party. *See* 33 U.S.C. § 2712(f); 33 C.F.R. § 136.115(a). The responsible party may then assert defenses to limit its liability for reimbursement, including establishing that the Fund's payments to the claimants were "arbitrary and capricious." *See Buffalo Marine Servs, Inc. v. United States*, 663 F.3d 750, 753 (5th Cir. 2011) ("The Administrative Procedure Act ('APA') allows a federal court to overturn an agency's ruling only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole."

---

[6] *See supra* note 1 (noting that "preemption" and "displacement" are often used interchangeably).

(internal quotation marks omitted)). As found by the district court, "OPA directly speaks to the claims asserted by ACL." Hence we hold that this "balanced and comprehensive remedial scheme" provides the exclusive remedy for a claimant to recover statutory removal costs from a responsible party and forecloses a responsible party from bringing a third-party complaint against a spill responder that has chosen to submit claims to the Fund after 90 days without payment. *See M/V BIG SAM*, 681 F.2d at 441.

In the present case, ES&H and USES both presented their claims to the Fund, rather than bringing suit against ACL. Nothing in OPA authorizes a responsible party to bring a third-party complaint against a claimant that has chosen, under § 2713(c)(2), to submit claims to the Fund after 90 days without payment. As the district court noted, such a third-party complaint would risk "avoid[ing] the strict liability that OPA places on responsible parties to pay the cleanup and removal costs," and frustrate the statutory scheme and its goal of providing rapid cleanup and claim resolution.

Contrary to ACL's assertion, OPA's savings clause at 33 U.S.C. § 2751(e) does not apply.  OPA's savings clause provides:

> Except as otherwise provided in this Act, this Act does not affect—
> (1) admiralty and maritime law; or
> (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

*Id.* § 2751(e). Statutory construction begins with the language of the statute, and, in the absence of ambiguity, often ends there. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). We have previously held that "savings clauses must be read with particularity" and should not be interpreted to

"disrupt the ordinary operation of conflict preemption."[7]  *In re Deepwater Horizon*, 745 F.3d at 171 (rejecting application of OPA savings clause codified at § 2718(c)); *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492-93 (1987) (rejecting application of two savings provisions of the CWA). The savings clause here begins "except as otherwise provided." 33 U.S.C. § 2751(e). OPA provides a procedure for submission, consideration, and payment of cleanup expenses by the Fund when the responsible party fails to settle such claims within 90 days—the situation presented here. As OPA did "otherwise provide[]," ACL's claims against ES&H and USES for return of payments made by the Fund under OPA cannot be saved by this clause. To interpret § 2751(e) as ACL proposes would be to supersede OPA, and courts cannot, without any textual warrant, expand the operation of savings clauses to modify the scope of displacement under OPA.[8] *See In re Deepwater Horizon*, 745 F.3d at 173.

While we find that OPA displaces ACL's alternative causes of action against ES&H and USES, we note that both ACL and the United States contemplate that ACL may raise its contentions in the district court in defense to the United States' OPA recoupment action. Should ACL establish that the

---

[7] While *In re Deepwater Horizon* addressed the preemption of state law claims, rather than the displacement of federal common law claims, the showing required for displacement is less than that for preemption as no evidence of "clear and manifest congressional purpose" to displace need be found. *See City of Milwaukee*, 451 U.S. at 316-17. Hence our holding that "a savings clause does not disrupt the ordinary operation of conflict preemption" is especially true in the displacement context. *In re Deepwater Horizon*, 745 F.3d at 171.

[8] Invoking 33 U.S.C. § 2710, ACL further asserts that OPA does not displace its implied indemnity claims against ES&H and USES. *See id*. § 2710(a) ("Nothing in this Act prohibits any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this Act."). "Indemnification" is "[t]he action of compensating for loss or damage sustained."  Black Law's Dictionary 38 (9th ed. 2009). Holding aside the government's plausible contention that § 2710 concerns liability for the spill itself, rather than liability for cleanup, ES&H and USES have caused no loss or damage to ACL that could form the basis of an indemnity claim. ACL did not actually pay ES&H and USES for any of the disputed material or labor expenses, nor has it yet been required to pay the government such amounts.

No. 13-30358

Fund's payments to ES&H and USES were unnecessary, unreasonable, or not in compliance with the relevant statutory criteria for Fund payments and hence were "arbitrary and capricious," it may pursue reduction of its liability to the Fund for reimbursement. Regardless of the outcome of the United States' action against ACL, however, ACL may not seek indemnification from ES&H and USES as the United States "acquir[ed] by subrogation all rights of the claimant" and hence stands in for ES&H and USES in any related action. *See* 33 U.S.C. § 2712(f); 33 C.F.R. § 136.115.

## CONCLUSION

For the reasons set forth above, we AFFIRM the district court's dismissal of ACL's claims against ES&H and USES as displaced under OPA.