**REVISED November 13, 2015**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 8, 2015

No. 15-30070

Lyle W. Cayce
Clerk

CHUC NGUYEN; LEO ANCALADE; MATTHEW ANDREWS; GEORGE
ARNSEN; MARK ARNOLD; ET AL,

      Plaintiffs - Appellees

v.

AMERICAN COMMERCIAL LINES, L.L.C.,

      Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:

Following a collision, a barge owned by American Commercial Lines,
L.L.C., discharged oil into the Mississippi River. A number of fishermen and
others dependent on fishing filed claims under the Oil Pollution Act of 1990
against the owner of the barge for damages arising from the spill. The district
court denied the motion of American Commercial Lines for summary judgment
but certified to this court the two controlling issues of law concerning the
requirements for proceeding under the Act. For the following reasons, we
AFFIRM in part and REVERSE in part the order denying summary judgment.

No. 15-30070

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 2008, a collision occurred on the Mississippi River in the Port of New Orleans between the M/V TINTOMARA and Barge DM-932, causing oil to discharge from the barge into the river. *See Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 551–52 (5th Cir. 2014) (discussing the same oil spill at issue in this case). Following the discharge, the oil traveled downriver and entered various bodies of water, including estuaries within Plaquemines Parish, Louisiana. The United States Coast Guard designated Barge DM-932 as the source of the discharge and named American Commercial Lines, L.L.C., ("ACL"), the owner of the barge, as the responsible party under the Oil Pollution Act of 1990 ("OPA"). ACL hired Worley Catastrophe Response, LLC, ("Worley") as its third-party claims administrator to handle any claims against ACL under the OPA for damages arising from the oil spill.

In June 2009, Michael A. Fenasci, an attorney representing commercial fishermen and others affected by the oil spill (the "claimants"), began submitting claims to Worley on form claim letters signed only by Fenasci—not the individual claimants. Attached to the form letters were copies of the individual fishermen's applicable licenses and selected copies of dock receipts for seafood sold to wholesalers. Each letter alleged that oil entered and contaminated the fishing grounds of the individual fisherman and that the oil disrupted fishing operations for approximately 25 days. The letters also stated that as a result of the pollution discharge, the fishermen suffered losses in earning capacity and in the subsistence use of harvested sea life. Each letter included a specific "evaluation of damages" that constituted the fisherman's demand under the OPA. Each evaluation included the claimant's gross loss of earning capacity, which was calculated by multiplying the gross loss of earnings per day by the total number of lost fishing days and then reduced by

2

No. 15-30070

5% to account for overhead costs.  All of the letters also alleged a loss of $60 per day in subsistence use of natural resources and $200 for hull cleaning.[1]

On July 23, 2009, Worley sent a letter to Fenasci stating that it had reviewed each of the 224 claims submitted thus far. Worley also requested additional documentation from each claimant.  The documentation included the following:  (1) a copy of the claimant's federal income tax return for 2007 and 2008; (2) a record of daily catch or sales data for the five months surrounding the spill; (3) an explanation, with support, for the number of lost fishing days; (4) a calculation demonstrating how the lost income per day was determined from the supporting materials provided by each claimant; (5) an explanation of how the $60 in subsistence loss was calculated; (6) the invoice for the hull cleaning; and (7) a map indicating where the claimant normally fished and normally stored his vessel.  Fenasci responded to Worley's request by sending tax returns for the individual claimants, which had increased from 224 to 247.  On December 2, 2009, Worley informed Fenasci that some of the submitted tax returns were missing information and reiterated its request for the other information it had previously demanded.  On June 4, 2010, Wayne W. Yuspeh, the attorney currently representing the claimants, responded that both his office and Fenasci's office had previously forwarded a number of claims concerning the oil spill to Worley.  He also stated that if no response with a good faith effort to settle the previously submitted claims was received within ten days, then a lawsuit would be filed.  On July 22, 2011, Yuspeh sent notices of new and amended individual claims, and on July 25, 2011, the claimants filed this action.

---

[1] While the majority of claimants are fishermen, some are seafood wholesalers or others affected by the oil spill.  The claim letters sent on behalf of these non-fishermen differed somewhat from the letters sent on behalf of the fishermen, but all of the letters included a demand for a specific amount of damages.

No. 15-30070

On November 9, 2012, the district court granted ACL's motion to dismiss under Federal Rule of Civil Procedure 12(c) and entered judgment accordingly on December 7, 2012. The court found that, by not providing Worley with the information it requested, the claimants had failed to comply with the OPA's requirement that claims first be properly presented to the responsible party. The court also explained that compliance with this presentment requirement was a mandatory condition precedent to commencing an action in court. However, the district court vacated its judgment on September 23, 2013, and directed ACL to file a motion for summary judgment. On July 18, 2014, the district court denied ACL's motion for summary judgment, stating that "[t]he Plaintiffs clearly satisfied the substantive presentment requirements imposed by the language of the OPA itself." On December 17, 2014, the district court denied ACL's motion for reconsideration but granted ACL's motion for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

The district court certified two issues of law for appeal: (1) "whether [the claimants] met proper presentment requirements when they failed to personally sign the claim forms . . . and did not provide certain specific requested items of evidence in support of their claims"; and (2) "whether the requirement of a 90-day waiting period after making proper presentment before starting litigation against the responsible party . . . coupled with the three-year limitation period for commencing an action against a responsible party . . . means that the [claimants] had to make a proper presentment at least 90 days before the expiration of the limitation period." The first issue is relevant to all claimants in this case, as none of them personally signed their claims or provided Worley with all of the documentation it requested. The second issue relates only to those claimants who first presented their claims to Worley on or after July 22, 2011, since these claimants failed to wait 90 days after first presenting their claims to file suit in order to avoid having their

4

claims time barred by the period of limitations. This court granted leave to appeal from the interlocutory order of the district court on January 27, 2015.

## II. STANDARD OF REVIEW

A district court may certify an interlocutory appeal from an order if the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Under 28 U.S.C. § 1292(b), a grant or denial of summary judgment is reviewed de novo, applying the same standard as the district court." *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010) (en banc) (citing *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 836–37 (5th Cir. 2009)). However, because review is only granted on "the issue[s] of law certified for appeal," *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 461 (5th Cir. 2005), this court's "review only extends to controlling questions of law," *Castellanos-Contreras*, 622 F.3d at 397 (citing *Tanks,* 417 F.3d at 461). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court must construe "all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (quoting *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005)).

## III. PRESENTMENT UNDER THE OPA

Congress passed the OPA, 33 U.S.C. § 2701 *et seq.*, after the Exxon Valdez oil spill "to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry." *Rice v. Harken Expl. Co.*, 250 F.3d 264, 266 (5th Cir. 2001) (citing S. Rep. No. 101-94 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 722, 723). To facilitate prompt cleanup and compensation, the

No. 15-30070

OPA requires the "Coast Guard [to] identif[y] 'responsible part[ies]' who must pay for oil spill cleanup in the first instance." *United States v. Am. Commercial Lines, LLC*, 759 F.3d 420, 422 (5th Cir. 2014) (quoting 33 U.S.C. § 2701(32)). "Responsible parties are strictly liable for cleanup costs and damages and [are] first in line to pay [for] . . . damages that may arise under OPA."[2] *Id.* at 422 n.2 (citing 33 U.S.C. § 2702(a)). Individuals and entities harmed by an oil spill may file claims against the responsible party for damages. However, "to promote settlement and avoid litigation," *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993), the OPA establishes specific procedures which claimants must follow. Specifically, the statute provides:

(a) Presentment

Except as provided in subsection (b) of this section, all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title.

(b) Presentment to Fund

(1) In general

Claims for removal costs or damages may be presented first to the [Oil Liability Trust] Fund—

(A) if the President has advertised or otherwise notified claimants in accordance with section 2714(c) of this title;

. . .

(c) Election

If a claim is presented in accordance with subsection (a) of this section and—

(1) each person to whom the claim is presented denies all liability for the claim, or

---

[2] While responsible parties may be held strictly liable, these parties may later seek contribution and indemnification from other parties whose actions contributed to the oil spill. 33 U.S.C. §§ 2709–2710, 2713.

(2) the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title, whichever is later,

the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the [Oil Liability Trust] Fund.

33 U.S.C. § 2713.

Thus, under the OPA's presentment requirement, claimants must first present their claims to the responsible party and wait until that party denies all liability or until 90 days from the time of presentment have passed before "commenc[ing] an action in court against the responsible party."[3] 33 U.S.C. § 2713(c); s*ee also Am. Commercial Lines*, 759 F.3d at 425 ("[I]f the responsible party has not paid the claim within 90 days, 'the claimant may elect to bring suit against the responsible party. . . .'" (quoting 33 U.S.C. § 2713(a))). In lieu of pursuing their claims in court, claimants may elect to file their claims against the Oil Liability Trust Fund (the "Fund"), which is a public trust fund established by the OPA to compensate those harmed by oil spills, if allowed by 33 U.S.C. § 2713(b).[4] In this case, no claimant has filed a claim against the Fund.

Neither party disputes that "the clear text of [33 U.S.C.] § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a) . . . ." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995). However, the parties disagree over whether the claimants have properly

---

[3] Nothing in the record suggests that Worley or ACL ever "denie[d] all liability for [any] claim," 33 U.S.C. § 2713(c)(1), so our analysis of the presentment requirement focuses on the 90-day waiting period where relevant.

[4] If a claimant files a claim against the Fund, the government is subrogated to the claimant's rights under the OPA and may assert those rights in litigation to recoup any payments on claims. 33 U.S.C. § 2715.

presented their claims to Worley, and the issues of law certified for appeal concern compliance with the presentment requirement. We first consider what supporting documentation claimants must include when they present their claims to a responsible party and conclude that the claimants have properly presented their claims to Worley. We then address whether claimants must present their claims to the responsible party at least 90 days before the end of the three-year period of limitations established by the OPA. *See* 33 U.S.C. § 2717(f)(1) (requiring that an action for damages be brought "within 3 years after . . . the date on which the loss and the connection of the loss with the discharge in question are reasonably discoverable with the exercise of due care.").

## A. The Claimants Submitted Sufficient Information to Comply with the Presentment Requirement

Turning first to the issue of what information and supporting documentation claimants must submit to comply with the OPA's presentment requirement, there is no question that the claimants presented their claims and some supporting information to Worley. Neither ACL nor the claimants dispute that Worley received claim letters from all claimants or that each letter included a statement alleging losses from the oil spill and an evaluation of damages, which constituted the claimant's demand for damages under the OPA. Each letter also included applicable fishing licenses and selected dock receipts for seafood sold to wholesalers. Most claimants also submitted federal tax returns to support their claims. However, ACL contends that because the claimants failed to produce all of the information and supporting documentation Worley requested, the claimants have not properly complied with the OPA's presentment requirement.

"As in all statutory construction cases, [our analysis] begin[s] with the language of the statute," *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450

8

No. 15-30070

(2002), so we turn to the language of the presentment requirement. In relevant part, the OPA requires that "all claims for removal costs or damages shall be presented first to the responsible party." 33 U.S.C. § 2713(a). The statute defines "claim" as "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident." 33 U.S.C. § 2701(3). "Damages" are defined to include real property damage, loss of subsistence use of natural resources, loss of revenues, loss of profits, and loss of public services. 33 U.S.C. § 2701(5); *see also* 33 U.S.C. § 2702(b)(2). "Statutory definitions control the meaning of statutory words . . . in the usual case," *Burgess v. United States*, 553 U.S. 124, 129 (2008) (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949)), and nothing in the plain language of any of these provisions or definitions suggests that claimants must submit anything more than what they have already submitted to Worley. We need not decide whether less documentation than what the claimants submitted here would satisfy the presentment requirement. Because the claimants have submitted sufficient supporting documentation, they have properly presented their claims to Worley under the OPA.

ACL's arguments, that more information and supporting documentation are required, are based on a misreading of the OPA. ACL urges this court to read 33 U.S.C. § 2713 together with § 2714 and argues that these two sections allow it, as the responsible party, to determine the required documentation for claims. ACL contends that because § 2713(a) refers to § 2714(a), which applies to the designation of the responsible party, this court must consider § 2714(b). Section 2714(b) requires a responsible party to "advertise the designation and the procedure by which claims may be presented, in accordance with regulations promulgated by the President." 33 U.S.C. § 2714(b)(1). ACL then points to 33 C.F.R. § 136.105—the OPA claims procedure regulation promulgated by the Coast Guard governing the supporting materials

9

claimants must include when filing claims against the Fund—as its justification for requiring claimants to submit additional information. This regulation requires claimants who file their claims against the Fund to provide, among other things, "[e]vidence to support the claim[s]." 33 C.F.R. § 136.105. Based on 33 U.S.C. §§ 2713 and 2714 and 33 C.F.R. § 136.105, ACL argues that it can require claimants to produce, as part of the presentment requirement, any documentation it desires as long as that documentation is consistent with 33 C.F.R. § 136.105.

We find, as the district court found, that ACL's reading of the statute is erroneous. First, ACL misreads the OPA by conflating the requirements for filing claims against the Fund with the requirements for presenting claims to a responsible party. The plain language of 33 U.S.C. § 2713(e) makes clear that 33 C.F.R. § 136.105 applies only to claims filed against the Fund and not to claims presented to responsible parties. Section 2713(e) empowers the "President [to] promulgate . . . regulations for the presentation, filing, processing, settlement, and adjudication of claims under this Act *against the Fund.*" 33 U.S.C. § 2713(e) (emphasis added). Based on this statutory language, 33 C.F.R. § 136.105 applies only to claims filed against the Fund and does not apply to claims presented to the responsible party.

Second, as an extension of its earlier argument, ACL contends that under the OPA, a claimant has only one claim. Therefore, ACL argues, the regulations governing that claim when it is filed against the Fund must also apply when it is presented to a responsible party. However, the fact that claimants possess only one claim does not imply that the requirements for submitting that claim cannot differ depending on whether the claim is being filed against the Fund or presented to the responsible party. The OPA defines a claim as "a request, made in writing, for a sum certain, for compensation for damages or removal costs resulting from an incident," and this definition

applies to all claims under the OPA. 33 U.S.C. § 2701(3). While § 2713(e) allows the President to promulgate regulations that expand what claimants must submit when filing their claims "against the Fund," it does not authorize the President to alter or expand the definition of a "claim" under the statute generally. Thus, the requirements for filing a claim against the Fund in 33 C.F.R. § 136.105 do not apply to claims presented to the responsible party. Because the plain text of 33 U.S.C. § 2713(e) establishes that 33 C.F.R. § 136.105 does not apply to claims presented to the responsible party, ACL cannot rely on this regulation to support its request for additional information.

Third, ACL correctly points out that other courts have held that the purpose of the presentment requirement "is to enable the parties to negotiate, if possible, a settlement of potential claims resulting from an oil spill without having to resort to litigation," and that "[i]n order to accomplish this purpose, the claim presented must inform the responsible party with some precision of the nature and extent of the damages alleged and of the amount of monetary damages claimed." *Johnson*, 830 F. Supp. at 311; *see also Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007). The purpose of the OPA can be achieved with the documentation the claimants submitted in this case, as that documentation provided sufficient information for ACL to decide if it wanted to settle a given claim. While ACL argues that it would be in a better negotiating position were it to obtain all of the information Worley requested, this is not a reason to expand the statute beyond its plain language. If ACL was not satisfied with the amount of information it received from the claimants, it remained free to determine it did not want to settle, deny the claims, and proceed to litigation where it would have access to the discovery process in the district court.

Finally, ACL argues that other environmental statutes which include citizen suits contain provisions requiring notice before a citizen can file suit.

No. 15-30070

ACL contends that, like the citizen suit notices in these statutes, the OPA requires that the presentment of a claim be adequate under some legal standard and offers 33 C.F.R. § 136.105 as that standard. *See, e.g.*, 33 U.S.C. § 1365(b). However, because this regulation does not apply when presenting claims to a responsible party under the OPA, it cannot serve as the legal standard for those claims. The OPA provides the legal standard against which a claim presented to a responsible party can be measured in 33 U.S.C. § 2701(3), which defines a claim generally. Using the statutory definition of claim as the standard of adequacy, the claim letters and supporting documentation submitted by the claimants are adequate.

In addition to requesting documentation and information beyond what the OPA requires the claimants to present to a responsible party, Worley also demanded that claimants individually sign their claim letters. ACL's arguments that claimants must sign their claim letters are based on its assertion that 33 C.F.R. § 136.105 applies to claims presented to the responsible party. The regulation requires that "[e]ach claim must be signed in ink by the claimant certifying to the best of the claimant's knowledge and belief that the claim accurately reflects all material facts." 33 C.F.R. § 136.105(c). However, as discussed above, this regulation does not apply to claims presented to the responsible party, and the statute that does apply, 33 U.S.C. § 2701, nowhere requires that claimants individually sign their claims. Moreover, each claim letter at issue here was signed by the claimant's attorney, and ACL does not contend that the attorney lacked the authority to sign on the claimant's behalf. Therefore, the claims at issue here were not improperly presented simply because they lacked the signatures of individual claimants.

The district court correctly concluded that the claimants' claims were not barred for failing to sign their claims or to provide sufficient supporting

12

documentation. The plain language of the presentment requirement does not compel claimants to provide any explanation or documentation beyond what they have already submitted, and the purpose of the presentment requirement can be achieved with the information submitted. The district court also correctly determined that the claims were not improperly presented simply because the individual claimants did not sign their claim letters, as the signature requirement appears in a regulation not applicable to the presentment of claims to the responsible party.

## B. The Claimants Must Comply With Both the Presentment Requirement and Three-Year Period of Limitations Under the OPA

We now address the second issue certified for appeal: whether claimants must present their claims to the responsible party at least 90 days before the end of the three-year period of limitations established by the OPA. The majority of claimants presented their claims to Worley in June and July of 2009 and did not file suit until July 2011, thus clearly presenting their claims at least 90 days prior to the expiration of the period of limitations. However, a number of claimants waited until July 22, 2011—nearly three years after the oil spill—to present their claims.[5] These claimants then commenced their actions along with all of the other claimants on July 25, 2011—only three days after first presenting their claims—because waiting the full 90 days would necessarily involve filing suit outside the three-year period of limitations. The district court held that "in this instance the failure to wait 90 days before submitting those claims should not be grounds for dismissal," and noted that "[m]ore than enough time has passed to cure this deficiency." We disagree.

---

[5] The district court referred to 48 claims filed within the 90-day presentment window, but the parties refer to 22 such claims. The number of claims filed in the 90-day window is not material to our analysis, and the district court can determine on remand the dates on which different claims were presented.

As before, our analysis begins with the language of the OPA. *Barnhart* 534 U.S. at 450; *see also Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). An action for damages is barred under the OPA unless it is brought:

within 3 years after—

> (A) the date on which the loss and the connection of the loss with the discharge in question are reasonably discoverable with the exercise of due care, or

> (B) in the case of natural resource damages under section 2702(b)(2)(A) of this title, the date of completion of the natural resources damage assessment under section 2706(c) of this title.

33 U.S.C. § 2717(f)(1). The provisions of the OPA establishing the presentment requirement and period of limitations do not refer to one another and therefore operate independently of each other. 33 U.S.C. § 2713, 2717; s*ee also Denehy v. Mass. Port Auth.*, 42 F. Supp. 3d 301, 308 (D. Mass. 2014) ("The catch is that the OPA's presentment requirement operates independently of the law's other statutes of limitations."). Because these two provisions operate independently, the claimants cannot, as a general rule, rely on compliance with one to excuse non-compliance with the other. The claimants who failed to comply with the presentment requirement's 90-day waiting period in order to avoid filing suit outside the three-year period of limitations offer four reasons why their claims should nonetheless be allowed to go forward. None of these reasons is persuasive.

First, these claimants urge this court to apply the "Equity Doctrine under maritime law" to excuse their failure to wait 90 days after presenting their claims to Worley to file suit. The claimants point out that at least one court has allowed a claimant to commence an action against a responsible party without waiting 90 days from the time of presentment. In *Denehy*, the

Coast Guard did not designate a responsible party until "55 days before the end of the three-year window to file the instant lawsuit." *Id.* The court explained that "[a]t that point, [the claimant] simply could not have met both the presentment requirement and the statute of limitations." *Id.* The claimant in *Denehy* chose to comply with the period of limitations by filing a claim "a few days before the three-year deadline but scarcely a month after presenting claims to [the responsible parties]." *Id.* After noting that "[s]tatutes are to be interpreted in accordance with their 'plain and ordinary meaning,' in order to give practical effect to the beneficial goals that impelled Congress to enact the law," the court determined that "the two sections best may be harmonized equitably by staying [the] timely filed action until a 90-day period for presentment has passed." *Id.* at 309 (internal citations omitted).

The claimant in *Denehy* pointed to extenuating circumstances that made it impossible to wait 90 days prior to commencing an action against the responsible party—the Coast Guard did not identify the responsible party until less than 90 days before the expiration of the period of limitations. However, the claimants here point to no extenuating circumstances that precluded them from presenting their claims 90 days before they filed suit. Although the claimants advance a number of hypothetical scenarios that they argue warrant excusing non-compliance with the 90-day waiting period, we decline their invitation to speculate. Without some explanation for why the claimants did not comply with both the presentment requirement and three-year period of limitations, we need not decide whether extenuating circumstances could justify excusing their noncompliance with the 90-day waiting period as the court in *Denehy* did. *Cf. Eastman v. Coffeyville Res. Ref. & Mktg., LLC*, No. 10-1216-MLB-KGG, 2010 WL 4810236, at *4 (D. Kan. Nov. 19, 2010) (refusing to relate an OPA claim back to the date the original complaint was filed, in part, because "if the amended complaint were to relate back to the date of the

original complaint, the OPA claim would be treated as having commenced . . . before the 90 day[] [presentment period] had expired.").

Second, the claimants point to the purpose of the OPA, which is to compensate those affected by oil spills.  They argue that this court must "do more . . . than simply read the letter of the OPA . . . in order to give practical effect to the beneficial goals that impelled Congress to enact the law."  *Denehy*, 42 F. Supp. 3d at 309; *see also Rice*, 250 F.3d at 266.  However, this court's "obligation is to give effect to congressional purpose so long as the congressional language does not itself bar that result."  *Johnson v. United States*, 529 U.S. 694, 710 n.10 (2000).  The statutory language of the OPA clearly requires that the claimants comply with both the 90-day waiting period and the three-year period of limitations.  Therefore, claimants may not ignore the 90-day waiting period simply because the period of limitations is about to expire.  We note that requiring the claimants to comply with the statutory language does not frustrate Congress's purpose.  The claimants had ample time to pursue litigation against the responsible party given the Coast Guard's early identification of that party and the absence of any other factors delaying claimants' pursuit of their claims.

Third, the claimants argue that at least one district court has allowed unpresented claims to proceed.  *See In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 808 F. Supp. 2d 943, 965 (E.D. La. 2011) *aff'd sub nom. In re DEEPWATER HORIZON*, 745 F.3d 157 (5th Cir. 2014).  However, *Deepwater Horizon* involved over 100,000 individual claims in a multi-district litigation.  While the court in that case declined to engage in the "impractical, time-consuming, and disruptive" task of reviewing so many claims to determine, *inter alia*, presentment prior to allowing them to proceed, the claimants here number less than 300, making the task of reviewing their claims much less arduous.  *Id.* (noting that "[a] judge handling [a multi-district

litigation] often must employ special procedures and case management tools."). Moreover, the court in *Deepwater Horizon* held that "presentment is a mandatory condition-precedent with respect to Plaintiffs' OPA claims," despite its decision to not review individual claims because of the number of claims involved. *Id.*

Finally, the claimants argue that ACL tacitly denied their claims and that ACL was not prejudiced by the district court allowing the claims presented on July 22, 2011, to go forward. Based on this tacit denial and lack of prejudice, the claimants argue that their claims are not barred under the OPA. The claimants contend that, because ACL had not responded to any of the previous claims presented to it, they were justified in assuming it would not respond to the claims presented in July 2011. However, an assumption that claims would be denied is not sufficient to constitute compliance with the presentment requirement. The statute requires that claimants wait until "each person to whom the claim is presented denies all liability for the claim, or . . . the claim is not settled by any person by payment within 90 days after the date upon which . . . the claim was presented." 33 U.S.C. § 2713. Without an actual denial of all liability for a claim by the responsible party or compliance with the 90-day waiting period, the presentment requirement has not been satisfied.

Therefore, based on the plain language of the statute, the claimants in this case who failed to present their claims at least 90 days prior to commencing an action in court are barred from pursuing litigation against ACL.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM in part and REVERSE in part the district court's order denying summary judgment. We REMAND for proceedings consistent with this opinion.

17